**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JEFFREY YATES and SHAWNA YATES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 26-cv-00072-SH |
| COUNTRY PREFERRED INSURANCE COMPANY, d/b/a COUNTRY FINANCIAL, and ERIC HASTINGS, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the Court is Plaintiffs' motion to remand, asserting a lack of complete diversity and, therefore, a lack of subject-matter jurisdiction.[1] The Court finds the joinder of Eric Hastings as a defendant was not fraudulent; the motion to remand will be granted; and this matter will be remanded to state court for further proceedings.

***Background***

Plaintiffs Jeffrey and Shawna Yates (the "Yates") have sued Country Preferred Insurance Company d/b/a Country Financial ("Country Financial") and its adjuster Eric Hastings ("Hastings") relating to the handling of their insurance claims in 2025. (Dkt. No. 2-1.) The Yates assert that the actions of Country Financial and Hastings have resulted in, among other things, delays in the resolution of their insurance claim and a failure to pay and/or a loss of benefits under the policy. (*Id.*) Against Country Financial, the Yates assert claims of (1) breach of contract (*id.* ¶¶ 65–70) and (2) breach of the duty of good faith and fair dealing (*id.* ¶¶ 71–76). Against Hastings, the Yates assert a claim

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (Dkt. No. 14.)

for fraud. (*Id.* ¶¶ 77–86.) The Yates and Hastings are citizens of Oklahoma. (*Id.* ¶¶ 1, 3.) Country Financial is a citizen of Illinois. (Dkt. No. 2 at 6.) *See* 28 U.S.C. § 1332(c)(1). Nevertheless, Country Financial has removed the action to this Court, arguing Hastings was fraudulently joined as a defendant. (Dkt. No. 2.) The Yates now move to remand.[2] (Dkt. No. 18.)

## *Analysis*

### I. Diversity Jurisdiction and Fraudulent Joinder

"Federal courts are courts of limited jurisdiction and generally can resolve only the cases that Congress grants them power to hear." *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 424 (2026). Congress has allowed defendants to remove state-court actions to federal court so long as those actions are the type over which federal district courts have original jurisdiction. 28 U.S.C. §1441(a).

One such class of cases involves diverse parties. *Hain*, 607 U.S. at 424; *see also* 28 U.S.C. § 1332(a) (establishing the requirements for diversity jurisdiction); *id.* § 1441(b)(2) (allowing diversity cases to be removed, so long as none of the defendants properly joined and served are citizens of the forum state). For this Court to exercise diversity jurisdiction, the matter in controversy must exceed $75,000, and "complete diversity between all plaintiffs and all defendants" must exist. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). "Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant." *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir.

[2] Hastings has also moved to dismiss the Yates' fraud claim. (Dkt. No. 11.) Because the undersigned finds this Court lacks subject-matter jurisdiction, it does not reach the motion to dismiss.

2013). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

The right of a defendant to remove "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (citation modified). A defendant may show fraudulent joinder by demonstrating "either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988 (citation modified); *see also Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967) ("[J]oinder of a resident defendant against whom no cause of action is stated is patent sham, and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." (citation modified)).

"In many cases, removability can be determined by the original pleadings and normally the statement of a cause of action against the resident defendant will suffice to prevent removal." *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). "But upon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Id.* (citation modified). A defendant "seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988 (citation modified).

## II. Factual Background

While the Court may pierce the pleadings, only Plaintiffs have offered anything beyond the petition—here, additional allegations. Defendants have not objected to this supplementation, and the Court considers the allegations as true for purposes of the

current motion. *See also Phillips v. State Farm Fire & Cas. Co.*, No. CIV-22-982-D, 2023 WL 336142, at *3 (W.D. Okla. Jan. 20, 2023) ("Plaintiffs are authorized to provide a more detailed statement of alleged facts existing at the time of removal which were not initially included in the petition.").

The Yates insured their home with Country Financial. (Dkt. No. 2-1 ¶ 11.) On June 6, 2025, lightning struck the home, damaging the attic and roof and causing wood splinters and foam insulation to be spread throughout the attic. (*Id.* ¶¶ 7–8.) The Yates immediately contacted Country Financial, who sent its adjuster Hastings to inspect the scene. (*Id.* ¶¶ 11–13.) The Yates then opened a claim for the June 6, 2025, loss. (*Id.* ¶ 14.) Several weeks later, on July 16, 2025, a roofing contractor noticed that a condensation drain was clogged from insulation spread by the lightning strike. (*Id.* ¶¶ 10, 16.) The contractor and the Yates then discovered that a wall, a baseboard, and some of the flooring downstairs were wet. (*Id.* ¶ 17.) In the following days, the Yates found more of their wood floors were actively warping. (*Id.* ¶ 19.) A contractor later discovered that the entire downstairs had evidence of high moisture and all the wood floors would need to be replaced. (*Id.* ¶ 21.)

Hastings originally told the Yates that the lightning strike could not have caused the clog, but he later said that the strike was responsible for the clog but could not have caused all of the downstairs damage. (Dkt. No. 18 at 3.) Hastings told the Yates that the water damage would be covered if they opened a second claim for the damage and did not include it as part of their first, lightning-strike claim. (Dkt. No. 2-1 ¶ 23.) All of these statements were false and were made with the intent to defraud the Yates from the full value of their insurance policy. (*E.g., id.* ¶¶ 23, 25, 30, 82; Dkt. No. 18 at 4.) The Yates relied on Hastings' statements by opening a second claim and foregoing further coverage

determinations from Country Financial. (Dkt. No. 2-1 ¶ 38; Dkt. No. 18 at 3.) The opening of the second claim gave Country Financial an easier basis to deny coverage for the first-floor damage as unrelated to the lightning strike in the first claim. (Dkt. No. 2-1 ¶ 81; Dkt. No. 18 at 3–4.) Because of the delays caused, in part, by Hastings' misrepresentations, the Yates were unable to occupy their home for four months. (Dkt. No. 2-1 ¶ 58.) The Yates also owe tens of thousands of dollars to a contractor who is threatening a mechanics' lien on their house, due to the lack of coverage attributed, at least in part, to Hastings' misstatements regarding the cause of the water damage and his luring them into filing a second claim. (*E.g.*, Dkt. No. 2-1 ¶¶ 56–57.)

The Yates also assert that Hastings deliberately solicited a cheaper roofing bid that did not include necessary repairs in an effort to deprive them of their full policy benefits on the first claim. (*Id.* ¶ 59.)

## III. Fraudulent Joinder—Inability to Establish a Claim

Defendants assert fraudulent joinder under the test's second prong—the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988 (citation modified).

Under this prong, the defendant must "demonstrate that there is no possibility that plaintiff would be able to establish a cause of action against the joined party in state

court."[3] *Montano v. Allstate Indem.*, 211 F.3d 1278 (table), 2000 WL 525592, at *1 (10th Cir. April 14, 2000) (unpublished) (citation modified).[4] Where the defendant asserts a problem with the plaintiff's ability to assert a cause of action based on the facts alleged, "the issue must be capable of summary determination and be proven with complete certainty." *Smoot*, 378 F.2d at 882 (noting federal courts will not "pre-try, as a matter of course, doubtful issues of fact to determine removability"). Where the defendant asserts a problem with the law, the Court keeps in mind that—"[a] claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (citation modified).

The fraudulent joinder "standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Montano*, 2000 WL 525592, at *2. Similarly, the Court does not look to whether the state-court petition stated a fraud claim with the level of particularity

---

[3] In another unpublished case, the Tenth Circuit states in dicta that to determine fraudulent joinder, a "court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (noting "the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law"). Some courts consider this standard compatible with the formulation stated in *Montano*. *See, e.g.*, *Willard v. State Farm Fire & Cas. Co.*, No. CIV-25-337-SLP, 2025 WL 2419274, at *3 (W.D. Okla. Aug. 21, 2025). Others have treated *Montano* and *Nerad* as inherently incompatible. *See, e.g.*, *Mayes Cnty. FOP Lodge #116, Inc v. Farmers Ins. Exch.*, No. 19-CV-687-JED-FHM, 2020 WL 6136236, at *3 (N.D. Okla. Oct. 19, 2020). To the extent the standards are conflicting, the undersigned applies the more rigorous standard in *Montano*.

[4] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

required by Rule 9(b), as such a defect could easily be corrected by amendment. *See McDaniel v. Cont'l Cas. Co.*, No. CIV-17-818-W, 2018 WL 8758739, at *3 & n.6 (W.D. Okla. Feb. 16, 2018); *see also Kitchen v. State Farm Fire & Cas. Co.*, No. CIV-25-1385-R, 2026 WL 736460, at *3–4 (W.D. Okla. Mar. 16, 2026).

Here, Defendants offer four bases for asserting that Plaintiffs cannot possibly establish a claim against Hastings: (1) Hastings owed no duty to the Yates (Dkt. No. 24 at 11); (2) the Yates did not rely on Hastings' statements (*id.* at 12–13); (3) Oklahoma law does not allow <u>any</u> tort claims to be asserted against individuals who adjust a claim on behalf of an insurer (*id.* at 14–19); and (4) the Yates' fraud claim against Hastings is improper as a matter of law, because it is not sufficiently distinct from their contract claim against Country Financial (*id.* at 19–23).

### A. Hastings' Duty to Plaintiffs Is Irrelevant to Their Claims of Actual Fraud

Defendants first argue that constructive fraud requires a legal or equitable duty that Hastings simply lacked. (Dkt. No. 24 at 9–12.) The elements of actual fraud, however, do not include an independent duty owed from the tortfeasor to the victim. Common law fraud requires "1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment." *Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1217–18. As the Court finds below that it is possible for the Yates to assert a claim of actual fraud against Hastings, the Court need not consider this argument any further.

### B. The Yates Have Pled Reliance

Defendants do not dispute that Plaintiffs have alleged the first three elements of an actual fraud claim—a false material misrepresentation, made with knowledge of its falsity, and made with the intention it be acted upon. Defendants assert, instead, that Plaintiffs will be unable to show the fourth element—that they relied on Hastings' misrepresentations to their detriment.[5] (Dkt. No. 24 at 12–13.) To make this argument, Defendants assert "Plaintiffs did not alter their actions in response to Hastings' communication"; Plaintiffs have not "indicated what other actions they would have taken but for Hastings' handling of the claim and his communications regarding it"; and the filing of a second claim "in no way materially altered [Plaintiffs'] position." (*Id.* at 12–13.) But this requires the Court to assume the facts alleged by Plaintiffs are untrue. For example, Plaintiffs allege that the Yates opened a second claim for water damage and forewent further coverage determinations from Country Financial in reliance on Hastings' fraudulent misstatements. They also allege that this was to their detriment, because the opening of that claim gave Country Financial an easier basis to deny coverage for the water damage.

[5] Defendants also argue that Plaintiffs' allegations "are very similar to the claim-handling-centered allegations set forth in *Pereff*, which the Court found insufficient to allege fraud." (Dkt. No. 24 at 12.) To the extent Defendants are asserting this argument applies to the actual fraud claim, they are wrong. The *Pereff* court addressed only "claims of constructive fraud/negligent misrepresentation and gross negligence," not actual fraud. *See Pereff v. Am. Strategic Ins. Corp.*, No. CIV-25-00383-JD, 2025 WL 3268887, at *1 (W.D. Okla. Nov. 24, 2025); *see also id.* at *3 ("Under Oklahoma law, constructive fraud or negligent misrepresentation consists of 'any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him." (citation modified)).

Country Financial has failed to meet its burden of showing the fraud claim will necessarily fail due to a lack of reliance.

**C. Oklahoma Law Allows Fraud Claims against Adjusters**

Defendants next argue that "Oklahoma law does not permit insureds to assert tort claims against individuals assisting insurance carriers with the adjustment of a claim." (Dkt. No. 24 at 14 (emphasis removed).) Defendants do not provide legal support for this argument.

Instead, Defendants cite to a series of cases holding that breach of the duty of good faith and fair dealing, arising as it does from the parties' implied duties under a contract, can only be asserted against the parties to that contract. *See Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, ¶¶ 16–17, 653 P.2d 907, 912 ("[I]t is argued [defendant Sowards] cannot be held to breach an implied covenant, determined as a matter of law to attach in every insurance contract, in the event (as here) that he is not a party to the contract. With such an allegation of error we are constrained to agree."); *Wathor v. Mut. Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 8, 87 P.3d 559, 562 ("Normally, only the insurer owes the duty of good faith and fair dealing to its insured. Agents of the insurer—even agents whose acts may have been material to a breach of the duty—do not normally owe the insured a duty of good faith since agents are not parties to the insurance contract.").

Defendants also return to the series of cases holding that a negligence claim does not lie against an adjuster, because the adjuster owes no duty of care to the insured. *See Hightower v. USAA Cas. Ins. Co.*, No. 16–CV–274–JED–FHM, 2017 WL 1347689, at *2 (N.D. Okla. Apr. 7, 2017) (noting Oklahoma has "adopted the majority view that an insured cannot maintain a separate tort action for negligence against an independent insurance adjuster hired by the insurer because the independent adjuster owes the

insured no duty of care" (citation modified)); *Wallace v. Allstate Ins. Co.*, No. CIV-12-0310-HE, 2012 WL 2060664, at *1 (W.D. Okla. June 7, 2012) (concluding that "the Oklahoma Supreme Court would follow the majority view and not impose a duty on independent insurance adjusters that would subject them to negligence actions by insureds as the result of an allegedly mishandled claim").

The cases cited do not support Defendants' assertion that Oklahoma would not allow a claim for actual fraud to be asserted against an agent of an insurance company, such as an adjuster. Under longstanding Oklahoma law, when an agent of a principal "steps aside to engage in a tortious act to the injury of property or personal rights of another, the agent becomes liable for the injury done." *Bane v. Anderson, Bryant & Co.*, 1989 OK 140, ¶ 15, 786 P.2d 1230, 1234 (quoting *Rogers v. Brummett*, 1923 OK 711, syl., 220 P. 362, 362). "If the principal acquiesces, aids, or knowingly accepts the benefits of the acts of the agent in the wrongful undertaking, both the principal and agent become joint tort-feasors." *Rogers*, 220 P. at 365, ¶ 3. As such, an agent can be liable for his own torts, including fraud, assuming the elements are properly alleged. *Bane*, 786 P.2d at 1234, ¶ 16; *see also Smoot v. B & J Restoration Servs., Inc.*, 2012 OK CIV APP 58, ¶ 16, 279 P.3d 805, 814 ("corporate officers may be individually liable for their tortious conduct even if they are acting on behalf of the corporation and regardless of whether a corporation may be held vicariously liable for the torts of its officers and directors").[6]

Defendants have offered no basis for viewing an agent differently when his principal is an insurance company. Instead, courts have recognized that agents of

[6] "An officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." Henry W. Ballantine, Ballantine on Corporations § 112 (1946), *quoted in Smoot*, 279 P.3d 805, 814 n.3.

insurance companies can be held liable for their own torts, again if the elements for such claims can be met. *See, e.g., Parkison v. Hanover Ins. Co.*, No. CIV-23-839-F, 2023 WL 8452436, at *2 & n.3 (W.D. Okla. Dec. 6, 2023) (citing *Bane* and finding the possibility of valid constructive fraud and negligence misrepresentation claims against insurer's agent); *Sexton v. State Farm Fire & Cas. Co.*, No. CIV-22-925-J, 2023 WL 11917022, at *2 (W.D. Okla. Jan. 5, 2023) (citing *Bane* and finding the possibility of valid claims for negligent procurement of insurance, constructive fraud, and negligent misrepresentation against insurance agency); *Branstetter Est. of Bloomer v. Progressive N. Ins. Co.*, No. 19-CV-475-GKF-JFJ, 2019 WL 13198239, at *3 (N.D. Okla. Nov. 20, 2019) (citing *Bane* and finding the plaintiff could pursue a claim for fraud against insurer's adjuster); *Bynum v. State Farm Fire & Cas. Co.*, No. CIV-18-540-D, 2018 WL 3769871, at *3 (W.D. Okla. Aug. 9, 2018) (rejecting argument "that an agent is immunized from individual liability for his own tortious conduct whenever his principal may be held vicariously liable under the *respondeat superior* doctrine"). *But see Redmond v. Progressive Direct Ins. Co.*, No. 26-CV-0197-CVE-SH, 2026 WL 1906671, *3 (N.D. Okla. July 2, 2026) (finding plaintiff had failed to allege employee defendant "'stepped aside' or acted outside of her capacity as an insurance adjuster . . . .").[7]

[7] The Court finds *Redmond* unpersuasive, as it misreads the nature of stepping aside. As the full quote reads, "If the agent, acting within the scope of his authority, in the pursuit of a lawful purpose, steps aside to engage in a tortious act to the injury of property or personal rights of another, the agent becomes liable in damages for the injury done." *Rogers*, 220 P. at 362, syl. Stepping aside appears to refer to stepping aside from the "lawful purpose," not necessarily from the principal's aims. As *Rogers* makes clear, when the principal acquiesces or aids in this stepping aside, it does not eliminate the claim against the agent, it just opens the door to an additional claim against the principal—assuming the elements for such a claim are met. *See* 220 P. at 365, ¶ 3.

Plaintiffs have the ability to establish a claim against Hastings, notwithstanding his role as an agent of Country Financial.

### D. A Party Is Not Estopped from Asserting a Fraud Claim Against One Party Merely Because He Has a Contract with Another Party

Finally, Defendants argue that "[b]ecause Oklahoma law does not permit plaintiffs to pursue both a fraud claim and a breach of contract claim where the two claims are not sufficiently distinct, Plaintiffs' fraud claim fails." (Dkt. No. 24 at 19.)

Defendants base this argument on a series of cases holding that a plaintiff cannot convert his simple breach of contract claim against a defendant into a claim for fraudulent breach of contract—against that same defendant.[8] *See Edwards v. Farmers Ins. Co.*, No. 08-CV-730-TCK-PJC, 2009 WL 4506218, at *5 (N.D. Okla. Nov. 24, 2009) (addressing the defendants' arguments that the plaintiff was attempting to recast the breach of contract claims against them into a tort); *Multimedia Games, Inc. v. Network Gaming Int'l Corp.*, No. 98-CV-67-H(M), 1999 WL 33914442, at *7 (N.D. Okla. Sept. 3, 1999) (addressing defendant's argument that fraud claim against it related solely to its breach of contract); *KT Specialty Distribution, LLC v. Xlibris Corp.*, No. 08-CV-0249-CVE-SAJ, 2008 WL 4279620, at *4 (N.D. Okla. Sept. 11, 2008) ("Plaintiff can not convert an ordinary breach of contract claim into a tort merely by alleging that defendant

[8] The only potential exception is *McGregor v. National Steak Processors, Inc.*, No. 11-CV-0570-CVE-TLW, 2012 WL 314059 (N.D. Okla. Feb. 1, 2012). In *McGregor*, the plaintiff asserted breach of contract against the corporate defendant but fraud (i.e., "deceit/concealment") against both the company and its owner, Kormondy. *Id.* at *2. The court dismissed the fraud claim, noting "Plaintiff cannot convert an ordinary breach of contract claim into a tort merely by alleging that defendants concealed their intention to breach the contract." *Id.* at *3. However, the contract in that case was a stock purchase agreement, or "SPA," where plaintiff sold his shares to Kormondy in exchange for a promissory note from the company—that is, both fraud defendants were a party to the underlying contract. *See id.* at *1.

intentionally breached the Agreement."); *Horton v. Bank of Am., N.A.*, 189 F. Supp. 3d 1286, 1291 (N.D. Okla. 2016) ("The Hortons' fraud and breach-of-contract claims are based on precisely the same conduct, namely, that BANA collected or attempted to collect more money under the mortgage than it was contractually entitled."); *Parrish v. Liberty Mut. Ins. Co.*, No. CIV-22-0802-HE, 2022 WL 17083650, at *1 (W.D. Okla. Nov. 17, 2022) (addressing insurers' arguments that insureds are limited to breach of contract and bad faith claims against them based on their handling of claims); *Lewis v. State Farm Fire & Cas. Co.*, No. 25-CV-00274-CVE-MTS, 2026 WL 687096, at *4 (N.D. Okla. Mar. 11, 2026) (addressing insurer's argument that the plaintiff is precluded from asserting a fraud claim against it, on top of contract and bad faith claims).

In any event, the Court finds Plaintiffs' fraud claims against Hastings sufficiently distinct from their contract claims against Country Financial. The necessary alleged conduct is different—Country Financial will have breached its insurance policy simply if it fails to pay the amounts owed under the policy; Hastings will have committed fraud if he intentionally made known false statements to the Yates in order to influence them to change their course of action to their detriment. Plaintiffs can prevail on their claims against Country Financial without showing a single fraudulent statement by Hastings, but Plaintiffs cannot prevail against Hastings by simply showing Country Financial's breach. *See Edwards*, 2009 WL 4506218, at *5 (noting the insurance company could breach the contract "innocently," but the fraud claim requires more). Similarly, the alleged fraud has resulted in more damages than the mere breach of contract—i.e., more than just the mere benefits owed under the contract.

Plaintiffs' claims against Hastings are not simply a recasting of their contract claims against Country Financial and are not "impossible" under Oklahoma law.

### *Conclusion*

Defendants have failed to meet their heavy burden of showing an inability of the plaintiff to establish a cause of action against the non-diverse party in state court. There is no fraudulent joinder, and the case will be remanded to state court.

IT IS THEREFORE ORDERED that *Plaintiffs' Motion to Remand to State Court* (Dkt. No. 18) is GRANTED. The case is remanded to the District Court of Tulsa County, Case No. CJ-2026-311.

ORDERED this 22nd day of September, 2026.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT